## 32171. MANUFACTURERS CASUALTY INSURANCE CO. *et al. v.* MANSFIELD.

Decided November 11, 1948. Rehearing denied December 9, 1948.

*Neely, Marshall & Greene,* for plaintiffs in error.
*William A. Ingram, Albert D. Tull,* contra.

FELTON, J. J. B. Mansfield was employed by C. M. Lyle, doing business as C. M. Lyle Construction Company, as a mechanic and was charged with the duty of keeping the road-building equipment of the employer in repair. For several years before his death, the employee had worked on road projects far distant from his home in Cartersville, Georgia. Early in November, 1946, the employer completed a road job near Butler,

Georgia. The machinery and equipment was then to be moved to a project known as the Calhoun-Rome job. In going from Butler to Calhoun it was necessary to pass through Cartersville. One of the pieces of equipment was an A. C. Tractor, which could not be used in road work during the winter months. Knowing this, Mr. Mansfield got permission to carry the tractor to his home, so that he could work on it there at odd times, and also received permission to use it in plowing his garden. The tractor was carried to Mansfield's home and was there when he died. The job on which the employee was working just prior to his death was about eighteen miles from the employee's home. He elected to go from his home to the job each day or whenever he was to work. The employer did not pay the employee's expenses of the trip to and from the job when he used his own automobile for that purpose. The employer only furnished transportation to the employees from the job to Calhoun, Georgia. On the day of his death the employee went from his home to the location of the job. About a mile and a half from the location he met Hugh Kown, an employee of a subcontractor working on the same job. Kown was on his way to his home which was between the job and Mr. Mansfield's home. Hugh Kown was driving the truck in which they were riding, and his brother was with him. Hugh Kown testified that Mr. Mansfield stopped him at that point and asked whether they were going to work that night, and that he replied that they were not going to work on account of rain "or something." (Another employee of the employer testified that the rock crusher had been moved but was in working order that night, and that Mansfield did not work that night because it had been raining.) Mansfield then requested Hugh Kown to go back to the job with him for the purpose of getting some motor oil and some tools. Mansfield and Hugh Kown then went to the job, and Kown's brother drove the truck to Kown's home. When they got to the job they drained the water out of the bulldozer and electric welder and got some fuel oil, motor oil, and a crank and some tools, and put them in Mansfield's car. Mansfield said that he was going to carry these things home and work on the tractor. On the way home by way of a short route and by way of Hugh Kown's home, a collision occurred as a result of which Mansfield died.

As this case in our opinion narrows down to one issue, we shall not more fully set out the evidence or discuss the various written opinions by the deputy director, dissenting director, and judge of the superior court. Under the facts, the finding is demanded that Mansfield furnished his own transportation from his home to the job. Ordinarily then, he was not engaged in the business of his employer in going to and from work. The oil, crank, and tools were stored at the job, and if the employee was not on duty on the day he was killed, and if he had gone from his home to the job primarily to get the tools for the purpose of working on the tractor, then his return home was not a personal matter, but the mission both ways was the engagement in the business of his employer. The difficulty about this case is this: the board was authorized to find that the employee went from his home to the point where he met Hugh Kown coming from the job, for the sole purpose of going to work, or for the purposes of going to work and getting the tools to work on the tractor. But the evidence shows that he learned *before* he reached the job that his night shift was not going to work. When he got this information he did not immediately return home, but went to the job site, and we think that the only possible reasonable conclusion is that he continued to the job site for the primary purpose of getting the tractor crank, tools, and fuel oil to use in connection with work on the tractor. What was first a personal matter, to wit, getting to his job, suddenly changed and became a business matter. Not only did the character of the trip change, but the time of his return home, and a different set of traffic dangers and circumstances. This change in the character of his trip to the job and his beginning of his return home and the timing of it resulted in his most unfortunate death, and it was occasioned by what we think was engagement in his employment. In such circumstances his home was something more than a home. It was a place of work, transportation to which it was the employer's obligation to furnish the same as if he had made the whole trip to the job site to obtain the crank and other things to use in his work on the tractor. We do not think that the fact that Mansfield let the water out of some machinery changes the case to any appreciable extent. The most reasonable inference is that so long as he was there he did the work, and since, if he had not been there, some-

one else would have performed the task. There is no evidence that it was Mansfield's duty to be on the job or do anything at all that night. There are some discrepancies in Hugh Kown's testimony about what the reason was for the night shift's not working, but we are of the opinion that he did not undertake to swear positively what the reason was. There is no conflict in his testimony to the effect that Mansfield learned that the night shift would not work the night of the death of Mansfield before he reached the job. In a statement which he made to the agent of an insurance company that carried the employer's liability policy on Mansfield's automobile, he stated that Mansfield was at the job when he learned he would not work that night. The witness explained that he told the agent the true facts, and that on account of a limited education he could not read all of the statement which was in the agent's handwriting. There was no denial of the witness's explanation as to the signed statement. The finding that the repairs to the tractor were to be made in return for a benefit to Mansfield is untenable. The mere fact that he received permission to plow his garden with it does not in and of itself authorize a finding that the employee's use of the tractor for his own benefit was not an incidental circumstance, and that it was one influencing the decision to permit the repair of the tractor at the employee's home. The fact that Mansfield had ridden to the job one or more times with Hugh Kown would not authorize a finding that the trip here in question was purely a personal one, on the theory that Mansfield was returning a favor by riding him to his home. Kown already had transportation home in a truck, but left it and went with Mansfield to accompany him and accommodate him. Nor would the fact that Mansfield took a by-pass route to his home change the case. The evidence was that the route he took, while not paved all the way, was more direct and avoided one railroad crossing and an underpass. There is no evidence that it was more hazardous, nor does any other reason appear why it rendered the injury noncompensable.

The judge of the superior court did not err in setting aside the award denying compensation, to which the claimant was entitled as a matter of law under the record.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur*